UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE THE MATTER OF:                              )
                                                  )
CRAIG BROWN, SABRINA WALLS- BROWN, and            )
CHELSEA BROWN, a Minor by and Through her         )
Mother and Next Best Friend,                      )
                                                  )
                        Plaintiffs,               )
                                                  )
vs.                                               )
                                                  )
CRETE MONEE COMMUNITY UNIT SCHOOL                 )
DISTRICT, No. 201-U, a Unified Illinois School District,)
LINNEA J. HOFMAN, Personally, and in Her Official )
Capacity as Guidance Counselor at Crete Monee High )
School, RAEANN HALFELDT, Personally and in her    )
Official Capacity as Teacher at Crete Monee High  )
School, and JOHN E. KONECKI, Personally and in his )
Official Capacity as Administrator at Crete Monee )
High School, CITY of CRETE, CRETE POLICE          )
DEPARTMENT, Officer Michael Buzan, Star # 112, in )
his Individual and Official Capacity,             )
                        Defendants.               )

## COMPLAINT

COMES NOW THE PLAINTIFFS, CRAIG BROWN, SABRINA WALLS-BROWN, and CHELSEA BROWN, a Minor by and Through Her Mother and Next Best Friend, by and through their counsel, Calvita J. Frederick and Associates and complaining of the Defendants, CRETE MONEE COMMUNITY UNIT SCHOOL DISTRICT NO. 201-U, a Unified Illinois Public School District, LINNEA J. HOFMAN, Personally, and in Her Official Capacity as Guidance Counselor at Crete Monee High School, RAEANN HALFELDT, Personally and in her Official Capacity as Teacher at Crete

Monee High School, and **JOHN E. KONECKI, Personally and in his Official Capacity as Administrator at Crete Monee High School, CITY OF CRETE, CRETE POLICE DEPARTMENT, OFFICER MICHAEL BUZAN, Star # 112, in his Individual and Official Capacity,** alleges as follows:

## THE PARTIES

1. **PLAINTIFF CRAIG BROWN.** ("CRAIG") is a black citizen of the United States, a resident of the State of Illinois living at 764 E. 104th Place, City of Chicago.

2. **PLAINTIFF SABRINA WALLS-BROWN.** ("SABRINA") is a black citizen of the United States, a resident of the State of Illinois living at 1024 Blackhawk Drive, City of University Park.

3. **PLAINTIFF CHELSEA BROWN, ("CHELSEA")** by and through her Mother and Next Best Friend**,** is a Minor and a black citizen of the United States, a resident of the State of Illinois living at 1024 Blackhawk Drive, City of University Park.

4. **DEFENDANT CRETE MONEE COMMUNITY UNIT SCHOOL DISTRICT, No. 201-U**, more commonly known as District 201-U, ("**District 201-U**") is a Unified Illinois Public-School District located in Crete, Illinois, in the south suburbs of Chicago, Illinois. The Defendant District located in Crete, Illinois, is within the jurisdiction of this Court.

5. **DEFENDANT LINNEA J. HOFMAN, ("Hofman")** is a White female citizen of the United States, a resident of the State of Illinois living in or around the cities of Crete-Monee.

6.     **DEFENDANT RAEANN HALFELDT, ("Halfeldt")** is a White female citizen of the United States, a resident of the State of Illinois living in or around the cities of Crete-Monee.

7.     **DEFENDANT JOHN E. KONECKI, ("Konecki")** is a White male citizen of the United States, a resident of the State of Illinois living in or around the cities of Crete-Monee.

9.     **DEFENDANT CITY OF CRETE ("Crete")** is an Illinois municipal corporation and is/was the employer of the Defendant Police Officer at all relevant times, and is responsible for the policies, practices and customs of the Crete Police Department that are alleged herein.

10.    **DEFENDANT OFFICER MICHAEL BUZAN**, ("**Buzan**') Star # 112, at all relevant times relevant hereto, was employed by the Crete Police Department AND LIVES IN OR AROUND THE CITIES OF Crete-Monee. Buzan is sued in his individual capacity, and he acted under color of law and within the scope of his employment.

## FACTS RELEVANT TO ALL COUNTS

11.    District 201 U operates a high school known as Crete Monee High School, located at 1515 W. Exchange St, in the City of Crete, Illinois.

13.    At all times hereinafter mentioned, District 201 U engaged in the business of operating a high school and providing educational services as a public high school. District 201 U is established pursuant to the laws of the State of Illinois. It serves the communities of Crete, Monee, University Park and portions of Park Forest. University Park represents the low-income part of the district. The district provides education for children from Pre-Kindergarten through 12th Grade.

14.     Chelsea was legally enrolled as a student in the District 201 U high school for

the academic year 2017-2018.  Chelsea has been a student in the schools operated by the

District 201-U since she began school in first grade in approximately 2009.

15.     In November of 2017, a Conference was held, and Chelsea was evaluated and

placed on an Individual Educational Program ("IEP").  The academic, development and

Functional needs stemming from the student's disabilities were noted as follows:

> "Adverse effects were identified as deficits in all core academic
> skills including reading, writing and math.  She requires
> curriculum adaptations and modifications in order to be instructed
> at her instructional level.  Intensive research-based interventions
> are needed to improve reading fluency and comprehension, as
> well as math applications and reasoning levels.  Writing skills
> also need improving.  High teacher support with a low student to
> staff ratio would also benefit her in the remediation of core
> academic skills.

> Chelsea's IEP also listed certain functional goals, including:

> "Ms. Brown will develop self-awareness and self-management
> skills to achieve school and life success…

> These goals are in compliance with ISBE Social Emotional
> Learning Standards 1A.3a and 1A.3b.  Several key sets of skills
> and attitudes provide a strong foundation for achieving school and
> life success.  This enables one to handle stress, control impulses,
> and motivate oneself to persevere in overcoming obstacles to goal
> achievement.  A related set of skills involves accurately assessing
> your abilities and interests, building strengths, and making
> effective use family, school, and community resources.  Finally, it
> is critical for students to be able to establish and monitor their
> progress toward achieving academic and personal goals."

16.     As relates to Instructional Objective Benchmarks, Chelsea's IEP indicated the

following:

> "Continue to maintain appropriate behavior even when
> frustrated", and "Engage in appropriate behavior when confronted
> with inappropriate behavior".

17.     Crete and Monee residents are primarily Caucasian, whereas University Park is primarily inhabited by African Americans.

18.     Upon information and belief, within the past 12 months, nearly thirty University Park families have been investigated for compliance with residency requirements, being subjected to morning and afternoon surveillance from vehicles stationed within the neighborhood and forced to bring in lease agreements and current utility bills, whereas, only one or very few families in Crete was subjected to this harassing process.

19.     On or about February 1, 2018, Chelsea was involved in a fight with another female student and received a two-day suspension.  While on suspension, Chelsea was informed that via a social media post, the other student was waiting to fight her again when she returned to school.

20.     Chelsea has no access to social media.

21.     Sabrina reported the threat to school personnel and asked for assistance prior to Chelsea's return which request was ignored.

22.     Upon her return to school on February 8, 2018 Chelsea was once again attacked by the same student (Daysha Ubnknown).

23.     Upon information and belief, Dean Hall or another student broke up the fight, took Chelsea to the office and placed her in the conference room.  While in the conference room Hoffman placed her hands on Chelsea's shoulders and another teacher Halfeldt, grabbed Chelsea by the wrist.  Chelsea asked Hoffman and Halfeldt not to touch her, to please call her mother, and tried to move away from Hoffman and Halfeldt.

24.     Hoffman then reported that Chelsea had struck and injured her, and that she wished to call the Crete Police Department and file charges against Chelsea.  Hofman knew or should have known that the charges filed against Chelsea would be a felony.

25.     Defendant Officer Buzan, from the Cret Police Department took the police report against Chelsea.  Sabrina and Craig's efforts to file a report against the school officials were rebuffed and not allowed by the Crete Monee Police Department.

26.     Hoffman, Halfeldt and Konecki all reported to Buzan that Chelsea had struck Hoffman three times.  Hoffman also alleged that she was injured when Chelsea allegedly struck her and intended to seek medical attention for her injuries.

27.     On March 1, 2018, Chelsea was charged with aggravated battery, a felony, and required to appear in Juvenile Court.

28.     A manifestation meeting was scheduled by District 201 -U, but Sabrina was advised that she could not bring counsel to the meeting.

29.     Craig and Sabrina have since removed Chelsea from school in District 201- U and enrolled her in another high school.

30.     Upon information and belief, Chelsea is not the only African American student that has been charged with a felony for purportedly attacking a teachers or administrator at Dist 201 – U high school. In addition, Plaintiffs have been informed and believes the Crete Police Department has threatened to bring action against certain school administrators if the Black children are not criminally charged under circumstances such as those that Chelsea faced.

31.     Craig and Sabrina believe that the real purpose behind the actions taken by Dist. 201 U against Chelsea stem from the pattern and practice of using any means possible to

6

force African American students out of the Crete Monee high school, and to force them into the criminal justice system. Similarly situated White students on a IEP are treated differently at the Crete-Monee high school.

## COUNT I

## VIOLATION OF 42 U.S.C.A. SEC 2000 BY District 201-U

32. Plaintiffs restate and reallege each and every allegation contained in Paragraphs 1-31.

33. Jurisdiction is conferred on this Court by 28 USC Sec 1332 and 28 U.S.C.A. Sec. 1343 (a) (3).

Title VI of the 1964 Civil Rights Act provides in pertinent part:

"Nondiscrimination in federally assisted Program. No person in the United States shall on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.SC. Sec 2000 et. seq.

34. Upon information and belief, Dist. 201 U, accepts and receives funding for its educational programs, facilities, and school lunch programs through the United States Department of Education, the Illinois Community College Board and other sources, including directly from the state and federal government.

35. Upon information and belief, said funding includes federal and state funds through the United States Department of Education, Illinois Community College Board and other sources, and is a form of financial assistance, which Dist. 201 - U receives and accepts from the federal government.

36.     Hoffman, Halfeldt and Konecki's treatment of Chelsea and subsequent statements made to Buzan intended to justify said treatment were racially motivated and was an attempt to stereotype Chelsea, a black girl, as a criminal.

37.      In confining Chelsea to a room and restraining her, calling the police and having her charged with a felony, all based upon race, Hoffman, Halfeldt and Konecki's actions were willful, malicious and in bad faith, with an improper motive of depriving Chelsea of her liberty with a malicious intent of violating Chelsea's civil rights.

38.     Dist. 201 U does not treat similarly situated white students by having them arrested and charged with a felony when they are on an IEP and attacked by another student, or engaged in a fight.

39.     District 201 U does not harass and investigate white students who live in Crete or Monee for compliance with residency requirements, subjecting them to morning and afternoon surveillance from vehicles stationed within the neighborhood and force them to bring in lease agreements and current utility bills to prove their residency within the school district.

40.     As a proximate result of District 201 U's racial discrimination toward Plaintiff, Chelsea suffered damages in the disruption of her school year, the necessity of her removal from the Dist. Unit 201 U's high school in the middle of the school year, severe emotional distress, embarrassment, psychological damage, and the deprivation of her civil rights.

41.     As a proximate result of District 201-U's racial discrimination toward Plaintiff, Sabrina suffered damages in the disruption of the school year for her child,  loss time and money from work, the necessity of the removal and the finding of a new school for

her child during the middle of the academic year, severe emotional distress, mental anguish and fear over the safety and well-being of her children while in school, embarrassment, psychological damage, and the deprivation of her civil rights.

42.     As a proximate result of District 201-U's racial discrimination toward Plaintiff, Craig suffered damages in the disruption of the school year for his daughter, loss time from work, the necessity of his removal and the finding of a new school for his child during the middle of the academic year, severe emotional distress, mental anguish and fear over the safety and well-being of his children while in school, embarrassment, psychological damage, and the deprivation of his civil rights.

43.     Hofman's actions and that of the dean occurred while Hofman, was acting in her official capacity as guidance counselor and agent, servant and/or employee of the District 201 U.

44.     Hofman's actions and those of the dean are imputed to the Distict 201 U.

45.     Halfeldt's actions and that of the dean occurred while Halfeldt was acting in her official capacity as teacher and agent, servant and/or employee of the District 201 U.

46.     Halfeldt's actions and those of the dean are imputed to the District 201 U.

47.     Konecki's and that of the dean occurred while Konecki was acting in his official capacity as Administrator and agent, servant and/or employee of the District 2-1 U.

48.     Konecki's actions and those of the dean are imputed to the District 201 U.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs **Chelsea, Sabrina and Craig** respectfully prays as follows:

I.      A declaratory judgment that Defendants and each of them violated 42 USC Sec. 2000.

II.     A permanent injunction-restraining Defendants and each of them, from violating 42 USC Sec. 2000.

III.    Compensatory damages in the sum total in excess of $75,000 for lost wages, emotional distress, psychological damage, embarrassment, deprivation of civil rights and out of pocket expenses.

IV.     Punitive damages in an amount equal to 2% of Defendants' combined net worth.

V.      Reasonable attorneys' fees and all costs of the proceeding.

**COUNT II**
**CIVIL CONSPIRACY AGAINST HOFMAN, HALFELDT, and KONRCKI**

49.     Plaintiff restates and realleges each and every allegation contained in Paragraphs 1- 31 above.

50.     Jurisdiction is conferred on this court by 28 U.S.C.A. Sec 1343) a) (1), and (a) (2). over civil actions for injury arising out of acts in furtherance of a conspiracy to interfere with civil rights.

51.     Defendants Hofman, Halfeldt and Konecki and each of them maliciously conspired together to create a racially hostile environment with intent to injure Chelsea by openly subjecting her to different and degrading treatment, based upon race, depriving her of their civil rights.

52.     In furtherance of the conspiracy, Defendants Hoffman, Halfeldt and Konecki, and each of them expressly agreed that they would report that Chelsea had attacked

Hofman, striking and injuring her, and that they had witnessed the attack, all the while knowing that Chelsea was subject to an IEP, which expressly stated that Chelsea had known issues of responding appropriately when frustrated. Hoffman. Halfeldt and Konecki agreed that they would treat Chelsea differently from other students with an IEP, based upon race. Hoffman, Halfeldt and Konecki and each of them also agreed that neither party would so inform Craig or Sabrina of their agreement.

53.     The basis for the conspiracy between Hoffman, Halfeldt and Konecki and each of them was discrimination based upon race and was intended to deprive black students of the opportunity to participate in the Dist. 201 -U by facilitating the charging of them with felonies and by otherwise, by intentionally subjecting them not only to criminal charges, but making sure they were charged with felonies and pushed into the criminal system early in their lives, making it so uncomfortable that the black students would voluntarily leave the school.

54.     Hoffman, Halfeldt and Konecki and each of them had the power to prevent the conspiracy and knowingly failed to do so.

55.     That upon information and belief, a minority of the District 201-U's student body is black and the District 201 U through their employees, administrators, agents and servants, including Hoffman, Halfeldt and Konecki, are actively engaged in activities designed to suspend and to force the Black students out of the District 201 -U's schools.

56.      As a direct and proximate result of these wrongful acts, Chelsea was denied her rights to continue at the Dist. 201 - U and receive their education there.

57.     As a direct and proximate result of these wrongful acts, Chelsea was caused to be wrongfully charged with a criminal offense.

58.     In committing these acts, Defendants Hoffman, Halfeldt and Konecki, and each of them acted with malice toward Plaintiffs, and Plaintiffs suffered damages including but not limited to loss of income, severe emotional distress, embarrassment, psychological damage, and the deprivation of their civil rights,

PRAYER FOR RELIEF

WHEREFORE, Plaintiff's Sabrina, Craig and Chelsea respectfully prays as follows:

A.  For entry of an award of compensatory damages against Defendants Hoffman, Halfeldt and Konecki, and each of them in an amount equal to the loss of income, expenses related to the changes in schools;

B.  For entry of an award of punitive damages in an amount equal to 2% of Defendants' combined net worth.

C.  For legal interest on such sums from the date of judgment until paid.

D.  For such other and further relief as this Court deems just and proper.

**COUNT III [State Law Claim for Malicious Prosecution]**

59.     Plaintiff restates and realleges each and every allegation contained in Paragraphs 1- 31 above.

60.     The Defendant Officer Buzan named in this Complaint accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause, he fabricated inculpatory evidence and suppressed exculpatory evidence, failed and refused to write a complaint against Hofman, made false statements to prosecutors and wrote false reports with the intent of exerting influence on, and to institute and continue, the judicial proceedings against Plaintiff.

61.     The Defendant Buzan named in this Complaint caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause.

62.     These judicial proceedings were instituted and continued maliciously, resulting in Plaintiff's wrongful prosecution and detainment, and the consequent injuries set forth above.

63.     The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of others.

64.     Upon information and belief, the prosecution for the aggravated battery will terminate in Plaintiff's favor.

65.     As a direct and proximate result of this misconduct, Plaintiff sustained, and continues to sustain, injuries as set forth above, including psychological injury and emotional distress.

        WHEREFORE, Plaintiff Chelsea demands substantial actual or compensatory damages against Defendant Buzar, and, because he acted maliciously, wantonly, and/or oppressively, punitive damages, plus the costs of this action, and such other and additional relief as this Court deems equitable and just.

## COUNT IV
## NEGLIGENT SUPERVISION AGAINST DEFENDANT DISTRICT 201 U

66.     Plaintiffs restate and reallege each and every allegation contained in Paragraphs 1-31 as though fully set forth herein.

67.     Defendant District 201 U failed to train, supervise, and monitor their employees, agents, and servants despite their duty to do so.

68.     Defendant District 201 U at all material times, had the power, ability, authority and duty to supervise, control, and train their employees, agents and servants.

69.     Defendant District 201 U knew or should reasonably have known that their agents, servants and employees were not adequately trained to respond to Chelsea's complaints regarding the threats, harassment, bullying and attacks by the other student, to the special needs of Chelsea as per her IEP and to Sabrina's request for help.

70.     Defendant District 201 U knew or should reasonably have known that such lack of training would proximately result in injury and emotional distress to Plaintiffs.

71.     Despite such duty and reasonable knowledge, Defendant failed to supervise, control and train their agents, servants, and employees.

72.     At all material times Defendant had the power, ability, authority, and duty to intervene, supervise, prohibit, control, regulate, discipline, and/or penalize the conduct of their agents, servants, and employees so as to prevent injury to the Plaintiffs.

73.     At all material times, Defendant knew or reasonably should have known that District 201 U personnel were engaging in the above-mentioned acts and omissions, that they were not adequately trained to respond to Plaintiffs' complaints, and the special needs of Chelsea and that such acts and omissions and such lack of training would proximately result in personal injury and emotional distress to Plaintiffs.

74.     Despite their duty to supervise their agents, servants and employees, Defendant negligently failed to act so as to prevent such injury to Plaintiffs.

75.     As a proximate cause of the acts and omissions of Defendants, and each of them, Plaintiffs were subjected to threats, bullying, harassment, false arrest and the charging with a felony, and personal injury, including but not limited to that described above.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff's Craig, Sabrina and Chelsea respectfully prays as follows:

E.  For entry of an award of compensatory damages against Defendant in an amount equal to the loss of income, expenses related to the changes in schools;

F.  For entry of an award of punitive damages in an amount equal to 2% of Defendants' combined net worth.

G.  For legal interest on such sums from the date of judgment until paid.

H.  For such other and further relief as this Court deems just and proper.

## COUNT V
## VIOLATION OF THE REHABILIATION ACT

76.     Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 31 above.

77.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

78.     Because a learning disability substantially limits at least one of Chelsea's major life activities Plaintiff is an individual with a disability under the Rehabilitation Act.

79.     Plaintiff was fully qualified to be high school student and was able to perform all the essential functions of the position.

80.     District 201 U receives either directly or indirectly federal funding, including not limited to:

   a.     Funding from the US. Department of Education;

   b.     Federal tax breaks;

   b.     Community grants used to target behavioral health, substance use disorder, childhood obesity and community issues; and

   c.     Federal and or state funds for school lunch programs.

81.     District 201 U's school program constitutes a program or activity within the meaning of the Rehabilitation Act.

82.      District 201 U's conduct was based on Chelsea's status as a person with a learning disability.

83.     District 201 U did not:

      a) conduct a bona fide and proper individualized assessment;

      b) engage in the interactive process;

      c) explore reasonable modifications and/or accommodations; and/or

      d) allow Chelsea to remain in school;

      e)  protect Chelsea from being charged with a felony, when they knew her behavior was in line with her behavioral disabilities identified in her IEP.

84.     District 201 U unlawfully filed charges against Chelsea because of her disability.

16

85.     District 201 U by virtue of the conduct described herein, discriminated against Chelsea because of her disabilities in violation of § 504 of the Rehabilitation Act of 1973.

**WHEREFORE,** Craig, Sabrina and Chelsea, requests that this Court enter judgment in her favor and against District 201 U as follows:

a) An Order seeking the termination of funding fromt h e Us. Department of Educatuion;

b) A declaratory judgment that District 201 U has discriminated against Chelsea by filing a complaint against her which resulted in a felony charge in violation of § 504 of the Rehabilitation Act;

c) An order requiring District 201 C to return Chelsea to school;

d) An order requiring district 201 C to provide any reasonable accommodations or modifications that may be necessary;

e) Compensatory damages;

f) Attorneys' fees and costs;

g) An order requiring District 201 U to undergo ADA and disability awareness training; and

h) Such other relief as the Court deems just and proper.

### COUNT VI [42 U.S.C. §1983 Monell Claim]

86.     Plaintiff repeats and realleges the foregoing paragraphs 1- 31 as if fully set forth herein.

87.     The unconstitutional actions of Defendant Buzar, as alleged above, were done pursuant to one or more interrelated de facto policies, practices and/or customs of the

Defendant City of Crete, acting through and by its Police Department, Police

Superintendents, Police Board, Mayors, and City Council.

88.     These interrelated de facto policies, practices, and customs included, inter alia:

a)      Filing criminal felony charges against Black students at District 201 U

threatening District 201 U employees, administrators and teacher with arrest if they

refuse to file charges against the District 201 U Black students;

b)      Using unconstitutionally coercive and torturous tactics while

interrogating suspects;

c)      Manufacturing and falsifying evidence in order to falsely arrest, charge

and prosecute persons who refuse to give information;

d)      The failure to properly train, supervise, discipline, transfer, monitor,

counsel and/or otherwise control police officers, particularly those who were repeatedly

accused of abuse of suspects; of making and/or facilitating wrongful detentions, false

arrests, wrongful imprisonments, malicious prosecutions and wrongful convictions; of

making false reports and statements; and/or of physically, psychologically or otherwise

illegally or improperly coercive questioning or interrogation of witnesses, suspects and

arrestees, particularly persons who were physically and/or psychologically abused

during questioning.

89.     Said interrelated policies, practices and customs, as set forth above, both

individually and together, were maintained and implemented with deliberate

indifference; and were, separately and together, a moving force and a direct and

proximate cause of the unconstitutional acts committed by the named Defendant and

their co-conspirators herein, and the injuries suffered by the Plaintiffs Chelsea, Sabrina and Craig.

WHEREFORE, Plaintiff Craig, Sabrina and Chelsea demands substantial actual or compensatory damages against Defendant City of Crete, plus the costs of this action, attorney's fees and such other and additional relief as this Court deems equitable and just.

### COUNT VII [State Law Claim for Intentional Infliction of Emotional Distress against Officer Buzar]

90.     Each paragraph of this Complaint 1-31 is incorporated as if restated fully herein.

91.     The acts and conduct of the Defendant Officer named in this Complaint, as set forth above, was extreme and outrageous. The Defendant's actions were rooted in an abuse of power or authority, and they were undertaken with intent to cause, or were in reckless disregard of the probability, that their conduct would cause severe emotional distress to Plaintiffs, as is more fully alleged above.

92.     As a direct and proximate result of the Defendant Officer's actions, Plaintiffs suffered and continue to suffer psychological injury and severe emotional distress.

WHEREFORE, Plaintiffs Craig, Sabrina and Chelsea demand substantial actual or compensatory damages against Defendant Buzar and the City of Crete, because Buzar acted maliciously, wantonly, and/or oppressively, punitive damages, plus the costs of this action, and such other and additional relief as this Court deems equitable and just.

### COUNT VII [State Law Claim for Respondeat Superior]

93.     Each paragraph of this Complaint 1-31 and 91-92 is incorporated as if restated fully herein.

94.     In committing the acts alleged in the preceding paragraphs, Defendant Officer Buzar was a member and agent of the Crete Police Department and the City of Crete, acting at all relevant times within the scope of his employment and under color of law.

95.     Defendant City of Crete is thereby liable as principal for all state law torts committed by the Defendant Officer as alleged herein, including malicious prosecution, and infliction of emotional distress conspiracy.

        WHEREFORE, Plaintiffs Craig, Sabrina and Chelsea demands compensatory damages against Defendant City of Crete in any and all amounts assessed against the individual Defendant officer, plus the costs of this action, and such other and additional relief as this Court deems equitable and just.

        **COUNT VIII [745 ILCS 10/9-102 Claim Against Defendant City of Crete]**

*96*.     Plaintiff repeats and realleges the foregoing paragraphs 1-31 as if fully set forth herein.

97.     Defendant City of Crete is the employer of Defendant Bazar.

98.     Defendant committed the acts alleged above under color of law and in the scope of his employment as an employee of the City of Crete.

        WHEREFORE, pursuant to 745 ILCS 10/9-102, Plaintiff Craig, Sabrina and Chelsea demand judgment against defendant City of Crete in the amount awarded to the Plaintiffs against any and all Defendants as compensatory damages, attorneys' fees, costs and interest, and/or for any settlement entered into between the Plaintiff and any Defendant, and for whatever additional relief this Court deems equitable and just.

**COUNT VI**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAISNT**
**Hoffman, Halfeldt and Konecki**

99. Plaintiff restates and realleges each and every allegation contained in paragraphs 1 – 31 herein.

100. At all material times, Defendants and each of them stood in a position of authority over all Plaintiffs with actual authority over Plaintiff Chelsea to affect her safety and well-being while in the District 201 U high school.

101. At all material times, Defendants and each of their said actions was an abuse of their power and actual authority to damage Plaintiffs' interest.

102. Those Defendants failed to act on Plaintiff's request for assistance to end the treatment detailed above that Chelsea was receiving from her classmate.

103. At all material times Defendants and each of them knew or should have know that their actions or omissions had a strong probability of causing emotional distress to the Plaintiffs Craig, Sabrina, and Chelsea.

104. At all material times Defendants and each of them knew or should have know that their actions in refusing to call Sabrina when Chelsea, knowing that she had a IEP, asked to be allowed to call her mother, and then calling the police on Chelsea, had a strong probability of causing emotional distress to the Plaintiffs Craig, Sabrina and Chelsea. At the time and place aforesaid Defendants committed one or more of the following acts:

        a.   Violation of 42 U.S.C.A. Section 1983;

        b.   Civil Conspiracy;

        c.   Violation of Title VI;

        d.   Violation of the Rehabilitative Act;

        e.   Violation of the ADA;

      f.   Intentional Infliction of Emotional Distress; and

      g.   Negligent Infliction of Emotional Distress

105.    As a proximate result of one or more of these intentional acts or omissions, Plaintiffs sustained severe and extreme emotional and physical distress.

106.    Those Defendants engaged in an ongoing course of conduct during which Plaintiffs' anxiety did and should reasonable have been expected to increase.

107.    Defendants' conduct was outrageous in view of their economic power and control over Plaintiffs and their children, and the disabilities detailed in Chelsea's IEP.

108.    Defendants' conduct was outrageous because it has caused Plaintiffs to suffer intense and ongoing emotional stress for a period in excess of twelve months.

109.    That the above-described conduct was reckless in that the Defendants knew or should have known that severe emotional distress was certain or substantially certain to result and the Defendants proceeded in conscious disregard of the effects on Plaintiffs.

110.    That as a direct and proximate result of Defendants' outrageous and reckless conduct that Plaintiffs did suffer stress related illnesses including stomach ailments, headaches, sleeplessness and undesired weight loss.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF demands judgment against the Defendants and each of them for a sum in excess of $75,000.00, punitive damages, costs and attorneys' fees.

### COUNT VII
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### BY ALL PLAINITFFS AGAISNT ALL DEFENDANTS

111.   Plaintiff restates and realleges each and every allegation contained in paragraphs 1 – 31 herein.

112.    Defendants and each of them had a duty to exercise due care in their relations with Plaintiffs and each of them.

113.    Defendants and each of them knew or should have known that their failure to exercise due care in the performance of their duties as school counselors, teachers and administrators, servants, employees, owners or administrators, would cause Plaintiffs, and each of them severe emotional distress.

114.    The Defendants and each of them knew or should have known that their duty to exercise due care in the training, monitoring and supervision of their agents, servants and employees would cause Plaintiffs severe emotional distress.

115.    Defendants and each of them breached their duty to exercise due care of their relations with the Plaintiffs.

116.    Those Defendants failed to act on Plaintiff's request for assistance to end the treatment detailed above that Chelsea was receiving from her classmates.

117.    At all material times Defendants and each of them knew or should have know that their actions or omissions had a strong probability of causing emotional distress to the Plaintiff Chelsea, Sabrina and Craig.

118.    At all material times Defendants and each of them knew or should have know that their actions in failing to call Sabrina and instead calling the police on Chelsea and filing criminal felony charges against her, had a strong probability of causing emotional distress to the Plaintiff Craig, Sabrina and Chelsea at the time and place aforesaid Defendants committed one or more of the following acts:

        h.   Violation of 42 U.S.C.A. Section 1983;

        i.   Civil Conspiracy;

j.   Violation of Title VI;

k.   Violation of the Rehabilitative Act;

l.   Violation of the ADA;

m.   Intentional Infliction of Emotional Distress; and

n.   Negligent Infliction of Emotional Distress.

119.   As a proximate result of one or more of these intentional acts or omissions, Plaintiff sustained severe and extreme emotional and physical distress.

120.   Those Defendants engaged in an ongoing course of conduct during which Plaintiffs anxiety did and should reasonable have been expected to increase.

121.   Defendants' conduct was outrageous in view of their economic power and control over Plaintiffs and their child.

122.   Defendants' conduct was outrageous because it has caused Plaintiffs to suffer intense and ongoing emotional stress for a period in excess of twelve months.

123.   That the above-described conduct was reckless in that the Defendants knew or should have known that severe emotional distress was certain or substantially certain to result and the Defendants proceeded in conscious disregard of the effects on Plaintiffs.

124.   That as a direct and proximate result of Defendants' outrageous and reckless conduct that Plaintiffs did suffer stress related illnesses including stomach ailments, headaches, sleeplessness and undesired weight loss.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF demands judgment against the Defendants and each of them for a sum in excess of $75,000.00, punitive damages, costs and attorneys' fees.

## COUNT VIII
## VIOLATION OF THE AMERICANS WITH DIABILITIES ACT

## <u>AGAISNT ALL DEFENDANTS</u>

125.   Plaintiff restates and realleges each and every allegation contained in paragraphs 1 – 31 herein.

126.   Title I of the ADA provides in pertinent part as follows:

> "It is unlawful for a covered entity not to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation." 29 CFR 1630.9

> And also,

> "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 29 CFR 1630.9

127.   The ADA applies to discrimination in education.

128.   District No 201 U and the City of Crete are a covered entity within the meaning of Title I of the ADA.

129.   Chelsea is a qualified entity within the meaning of Title I of the ADA

130.   By virtue of the conduct described herein, District NO 201 U and the city of Crete discriminated against Chelsea because of her disability in violation of Title I of the ADA and deprived her of equal educational opportunities.

131.   As a result of result of District NO 201 U and the City of Crete's actions, CHELSEA has suffered economic loss, a deleterious impact on her educational career, dignitary injuries and other injuries.

**WHEREFORE**, Chelsea requests that this Court enter judgment in her favor and against District NO 201 U and the City of Crete as follows:

a) An Order requesting termination of funding from the Unioted states Department of Education;

b) A declaratory judgment that DISTRICT NO 201 U and the City of Crete has discriminated against Chelsea by constructively

terminating her employment in violation of Title I of the ADA;

c) An order requiring District NO 201 U and City of Crete to return Chelsea to the Crete Monee high school if she so chooses;

d) An order requiring DISTRICT NO 201 U to provide any reasonable accommodations or

modifications that may be necessary;

e) Compensatory damages, including back pay;

f) Attorneys' fees and costs;

g) An order requiring DISTRICT NO 201 U to undergo ADA and disability awareness training; and

h) Such other relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF demands judgment against the Defendants and each of them for a sum in excess of $75,000.00, punitive damages, costs and attorneys' fees.

Dated February 28, 2019                    /s/ Calvita J. Frederick
                                           One of Plaintiffs' Attorneys


Calvita J. Frederick
Attorney for Plaintiff
Post Office Box 802976
Chicago, Illinois 60680-2976
(312) 421-5544
ARDC # 6184001